IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DERRICK LEVI WOEPPEL,<br><br>Defendant. | CR 26-22-BLG-KSL<br><br>MEMORANDUM OPINION AND ORDER |

Defendant Derrick Levi Woeppel is charged with unlawful possession of a firearm under 18 U.S.C. §922(g)(1) and a related forfeiture allegation. (Doc. 2). He now moves to suppress all the evidence obtained during a traffic stop. (Doc. 26). The Court held a hearing on October 6, 2026, during which Montana Highway Patrol Trooper McKinney, Derrick Woeppel, and Sabrina Schenk testified. (Doc. 39). Because law enforcement had reasonable and articulable suspicion to stop Woeppel's vehicle, the Court denies the motion to suppress.

## I. Background

On November 27, 2025, Trooper McKinney was stopped at an intersection when he saw a Honda Accord on the cross street waiting to turn left. (Doc. 27-1 at 3). He testified that he did not know the vehicle. He observed the front left turn signal "not working properly" and the rear left turn signal "flashing quickly." (*Id.*) He also observed a "large crack" in the middle of the car's windshield, "directly in the [driver's] line of sight." (*Id.*) After making these observations, Trooper McKinney activated his lights and executed a traffic stop. (*Id.*) Woeppel was driving the vehicle, and Schenk was in the passenger seat. (*Id.*) Trooper McKinney testified that he stopped the car because of the crack on the windshield and the malfunctioning turn signal.

Trooper McKinney's testimony identified two reasons the crack in the windshield concerned him. First, because the stop was around dusk, he was concerned that headlights could refract through the crack, causing a glare and making the vehicle unsafe to operate. Second, he was concerned that because the crack was in Woeppel's line of vision, the crack would make it difficult to see the roadway.

As a part of the stop, Trooper McKinney ordered Woeppel out of the car. (Doc. 27-1 at 3). As Woeppel exited the vehicle, Trooper McKinney saw a "bulge" in Woeppel's waistband. (*Id.*) When asked what weapons he was carrying, Woeppel

admitted that he had a gun. (*Id.*) He then lifted his hoodie to reveal a pistol protruding from a fanny pack. (*Id.* at 3-4). As a result of the stop, the government charged Woeppel with unlawful possession of a firearm in violation of 18 U.S.C. §922(g)(1) and a related forfeiture allegation. (Doc. 2). Woeppel now argues that Trooper McKinney did not have reasonable suspicion to execute the traffic stop and that all evidence found as a result of the stop must be suppressed as fruit of the poisonous tree. (Doc. 27 at 10).

## II. Legal Standard

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. Under the Fourth Amendment, officers need "reasonable suspicion" that a traffic violation has occurred. *United States v. Aguilera*, 188 F.4th 1203, 1210 (9th Cir. 2026). If the officer conducting a traffic stop lacks reasonable suspicion, the Court must suppress any evidence found as a result of the stop. *United States v. Thomas*, 211 F.3d 1186, 1192 (9th Cir. 2000). Motions to suppress are governed by Federal Rule of Criminal Procedure 12(b)(3)(C). In such motions, the government bears the burden of demonstrating "specific and articulable facts which, taken together with rational inferences from those facts" warrant reasonable suspicion. *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *see also United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012).

## III. Analysis

To conduct a traffic stop, an officer only needs reasonable suspicion that the person stopped is violating the law. *Heien v. North Carolina*, 574 U.S. 54, 60 (2014). "A traffic violation alone is sufficient to establish reasonable suspicion." *United States v. Choudhry*, 461 F.3d 1097, 1100 (9th Cir. 2006). Reasonable suspicion depends on the totality of the circumstances. *Id.* Officers can rely on their "training and experience" as well as "common sense." *United States v. Mattarolo*, 209 F.3d 1153, 1157 (9th Cir. 2000) (training and experience); *Kansas v. Glover*, 589 U.S. 376, 383-84 (2020) (common sense).

The question is whether the facts known to the officer supported a reasonable suspicion that Woeppel was violating Montana law, not whether a violation in fact occurred. *Heien*, 574 U.S. at 60-61. An officer's mistake of fact or law does not defeat reasonable suspicion, so long as the mistake is "objectively reasonable." *Id.* (cleaned up). Because Trooper McKinney based the stop here on the crack in the windshield and the malfunctioning turn signal, the Court asks whether the facts he observed supported a reasonable suspicion that either violated state law. *Choudhry*, 461 F.3d at 1100; *Sutton*, 794 F.2d at 1427. Because the crack in the windshield

provided reasonable suspicion, the Court need not address whether the malfunctioning turn signal provided an independent basis for the stop.

Turning to the crack in the windshield, the parties dispute whether Trooper McKinney had reasonable suspicion to stop Woeppel based on a violation of Montana Code Annotated §61-9-405(2)(b). (Doc. 27 at 9; Doc. 28 at 2 & n.2). That code provision provides that a motorist cannot drive with "a windshield that is shattered or in such a defective condition that it materially impairs or obstructs the driver's clear view." The parties disagree about whether Trooper McKinney's observations gave rise to reasonable suspicion that the crack in the windshield materially impaired or obstructed Woeppel's view. (Doc. 27 at 9-10; Doc. 28 at 2, 5-6).

When evaluating reasonable suspicion based on cracked windshields, courts consider the location and size of the crack. For example, in *United States v. Hackett*, the court considered whether the officer had reasonable suspicion for pulling over a car with a windshield crack that "horizontally extend[ed] the entire length of the windshield … directly within the driver's field of vision." No. CR 18-135-BLG-SPW-TJC-1, 2019 WL 4044097, at *2-3 (D. Mont. June 5, 2019), *report and recommendation adopted*, No. CR 18-135-BLG-SPW-1, 2019 WL 2762898 (D. Mont. July 2, 2019). Because the officer observed a crack of that length and in that location

on the windshield, the court held the stop was supported by reasonable suspicion of a violation of the same statute at issue here. *Id.* at *2, *4.

Based on the exhibits and Trooper McKinney's testimony here, the Court finds that Trooper McKinney had reasonable suspicion to stop the vehicle. As in *Hackett*, the crack here ran across the middle of the windshield, and "Woeppel readily admits the crack was in the driver's line of vision." (Doc. 33 at 9; *see also* Doc. 28 at 2). The Court credits Trooper McKinney's testimony that he observed a large crack running across the full length of the windshield in the driver's line of sight. Trooper McKinney testified that a crack in that position can refract oncoming headlights and impair the driver's vision, particularly at dusk when the stop occurred—an objectively reasonable concern that Schenk herself acknowledged on cross-examination. Trooper McKinney's account of the crack's size and location is corroborated by his contemporaneous report (Doc. 27-1 at 3) and the photos Woeppel himself introduced (Doc. 27-2; Doc. 27-3). Common sense also supports Trooper McKinney's inference that the large crack across the full length of the windshield could obstruct the driver's view of the roadway. *Glover*, 589 U.S. at 383-84. Based on what Trooper McKinney observed, a reasonable officer could suspect a violation of Montana Code Annotated §61-9-405(2)(b).

In contrast, Woeppel's counterarguments are either irrelevant or unsupported by the record. At the suppression hearing, Woeppel focused most of his windshield testimony on his assertions that the crack was below his line of view and that he was able to see out of the windshield. As noted, Woeppel concedes that the crack was in his line of view in his briefing. (Doc. 33 at 9). More fundamentally, the question is what inferences a reasonable officer could draw from Trooper McKinney's observations, not what Woeppel actually saw. *Sutton*, 794 F.2d at 1427. Here, Trooper McKinney observed a crack spanning the length of the windshield at approximately the same line of vision as the driver, and it was reasonable for him to suspect that crack violated state law.

Woeppel's attempt to distinguish *Hackett* fails because it relies on a characterization of the crack that is inconsistent with the photographs, body camera footage, and Trooper McKinney's testimony. The exhibits and body camera depict a crack that runs the full length across the middle of the windshield in Woeppel's line of vision. (Doc. 27-2; Doc. 27-3). Trooper McKinney credibly testified that he saw a large crack and that cracks like Woeppel's have the potential to refract headlights, blinding the driver. Because the crack extended the length of the middle of the windshield, a reasonable officer could suspect that the crack obstructed the driver's clear view of the roadway. In response, Woeppel only states that unlike *Hackett*, "no one

could have observed the hairline crack across the windshield [here] and reasonably believed it obstructed the driver's view, much less materially so." (Doc. 27 at 10). Woeppel's bare factual assertion cannot overcome the weight of the record evidence.

As a whole, the Court views Trooper McKinney's testimony as credible, and Woeppel's testimony about what he could see is of limited relevance to the objective standard. *Choudhry*, 461 F.3d at 1100. Woeppel's testimony, even viewed favorably towards him, does not dispute what Trooper McKinney observed. Trooper McKinney observed a large crack across the center of the windshield at dusk, and from that, a reasonable officer could suspect the crack materially impaired the driver's view. The Court finds Trooper McKinney had reasonable suspicion that the crack "materially impair[ed]" Woeppel's view in violation of Montana Code Annotated §61-9-405(2)(b). *Hackett,* 2019 WL 4044097, at *4.

Because Trooper McKinney had reasonable suspicion that the crack "materially impair[ed]" Woeppel's view in violation of state law, the stop was lawful. *Sutton*, 794 F.2d at 1427. The crack in the windshield independently justifies the stop, so the Court does not reach whether the malfunctioning turn signal provides a separate basis for the stop. As Woeppel only challenges reasonable suspicion for the stop and not anything that happened after, the determination that reasonable suspicion existed ends the inquiry. (Doc. 27 at 10).

## IV. Conclusion

Because the crack in the windshield provided reasonable and articulable suspicion to stop Woeppel's vehicle, the motion to suppress is **DENIED**. IT IS SO ORDERED.

DATED this 23rd day of October, 2026.

Kathleen Lane

KATHLEEN S. LANE
United States District Judge